**Thomas R. RALSTON**

v.

**Fred R. HOBBS.**

Court of Appeals of Tennessee, at Nashville.

March 13, 2009 Session.

June 4, 2009.

Permission to Appeal Denied by Supreme Court Jan. 25, 2010.

Published Pursuant to Tenn. R. S. Ct. 4(D).

William Kennerly Burger, Murfreesboro, Tennessee, for the appellant, Fred R. Hobbs.

John H. Baker III, Murfreesboro, Tennessee, for the appellee, Thomas R. Ralston.

## OPINION

FRANK G. CLEMENT, JR., J., delivered the opinion of the court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

Plaintiff filed this action to recover more than $279,000 that his nephew allegedly converted while acting as his attorney-in-fact. Plaintiff alleged, *inter alia*, that Defendant, his attorney-in-fact, breached his fiduciary duties by transferring Plaintiff's life-savings into Defendant's personal bank accounts. The trial court granted summary judgment for Plaintiff finding that there were no genuine issues of material fact, that Defendant admitted a confidential relationship with Plaintiff, and that the depletion of Plaintiff's life-savings was unfair as a matter of law. On appeal, Defendant argues that genuine issues of material fact exist, that the claim for conversion is barred by the statute of limitations, and that the trial court failed to join an indispensable party under Tenn. R. Civ. P. 19. With the exception of the first three transfers which occurred more than three years prior to the filing of this action, we affirm the trial court's denial of Defendant's motion to dismiss and the grant of summary judgment for Plaintiff finding that there are no genuine issues of material fact, and that Plaintiff was entitled to judgment as a matter of law because Defendant breached his fiduciary duty as attorney-in-fact when he converted the funds from his uncle's savings account for his own use and benefit. As for the first three transfers, each of which occurred more than three years prior to the filing of this action, we have determined there is a dispute of fact concerning whether Plaintiff could have discovered the conversion of those funds upon reasonable inquiry; therefore, summary judgment was not appropriate as to Plaintiff's claim to recover those funds.

Thomas R. Ralston (Plaintiff), now 85 years old, was one of five children who grew up on the family farm near Eagleville, Tennessee. Their mother died when Plaintiff was only 9 years old. Following her death, their father raised Plaintiff, his brothers John, Andrew and David, and sister, Myrtle, on the family farm. John Ralston moved away from the farm at the age of 17. When Myrtle married, she too moved away. Plaintiff and his brothers Andrew and David Ralston remained on the family farm where they have lived or worked their entire lives.

Their father, the patriarch of the family, died intestate in 1966, at which time his

five children each inherited a share of their father's estate, including the family farm. After their father's death in 1966, Andrew and David Ralston managed the family farm while Plaintiff assisted them working primarily as a laborer. Following the untimely death of her husband, Myrtle returned to the family farm with her two-year-old child, Fred Hobbs. For the next 35 years, Myrtle maintained the family home and cooked for her brothers Tom, Andrew and David. Myrtle's son, Fred Hobbs, was raised by his mother on the family farm. John Ralston, who had moved away before his father's death and was estranged from some of the family for decades, did not return until 2000.

In June 2000, David Ralston, Andrew Ralston, and Myrtle Hobbs had powers of attorneys prepared by Attorney Wendell Rowland. One month later, on July 13, 2000, Fred Hobbs (hereinafter "Defendant") drove Plaintiff to Attorney Rowland's office to execute a will for Plaintiff. While there, Rowland prepared a power of attorney at Plaintiff's request designating Defendant as Plaintiff's attorney-in-fact.

Within days after Plaintiff executed the power of attorney, Defendant used the power of attorney to add himself to Plaintiff's savings and checking accounts so that he would have signatory privileges. Defendant stated that he did this for "convenience," so that he could pay Plaintiff's bills without having to use the power of attorney each time he did so. The mailing address for Plaintiff's bank accounts was not changed when Defendant was added to the bank accounts and for two and one-half years thereafter the bank statements continued to be mailed to Plaintiff at his home address.

As of January 22, 2003, Plaintiff had $303,541.00 in his savings account. Shortly after January 22, 2003, Defendant changed the mailing address on Plaintiff's bank accounts so the bank statements would no longer go to Plaintiff's address; instead, Defendant directed that the bank statements be mailed to Defendant's post office box. During the 26 months that followed, Defendant withdrew in excess of $279,000 from Plaintiff's savings account, all of which he deposited into three bank accounts, none of which Plaintiff had an interest in. As a consequence of Defendant's actions, Plaintiff's savings of $303,541.00 was reduced to $18,742.56 as of April 21, 2005. By October 17, 2005, only $10,109.04 remained. Following the payment of $8,500 for the purpose of prepaying Plaintiff's funeral expenses, only $1,599.46 remained of Plaintiff's life savings.

Defendant could only account for the prepaid funeral expense of $8,500, and he admitted that he could not account for $279,000 of the funds taken from Plaintiff's savings account. Defendant admitted that he made no sizable purchases for Plaintiff's benefit while acting as his attorney-in-fact, and that Plaintiff had no history of making gifts. Defendant also admitted that he used Plaintiff's checking account, into which Plaintiff's social security benefits were deposited, to pay Plaintiff's monthly expenses during the period at issue.[1]

Because Defendant changed the mailing address so that Plaintiff would no longer receive the bank statements, Plaintiff was unaware of the periodic withdrawals from his bank account. In the Spring of 2004, Plaintiff went to the bank to inquire why he was not receiving his bank statements.

---

1. The disputed transactions in this case concern only Plaintiff's savings account, as the checking account records reveal expenditures properly made for Plaintiff's medical care, medicine, utilities, telephone and insurance expenses.

He was informed by a bank employee the statements were being mailed as directed to the post office box. The bank employee also told Plaintiff that the bank would send him the bank statements. Plaintiff, however, states he did not receive them. In the Summer of 2004, Plaintiff again went to the bank to inquire why he was not receiving his bank statements, and he was again informed that the statements were being mailed to the post office box. Following this visit, the bank mailed to Plaintiff copies of statements from February 2000 to the present. It was after receiving the bank statements Plaintiff realized that essentially all of his savings had been withdrawn from his account.

On February 23, 2006, Plaintiff filed suit against Defendant alleging in pertinent part that the Durable General Power of Attorney was invalid because it was secured by Defendant's coercion or fraudulent means; that Defendant was in a confidential and fiduciary relationship with Plaintiff; and that Defendant breached his duty as a fiduciary when he dealt in bad faith and self-dealing to the loss and detriment of Plaintiff. An answer was timely filed.

Following substantial discovery, Plaintiff filed a motion for summary judgment. Defendant filed a response to the summary judgment motion and a Motion to Dismiss. In his Motion to Dismiss, Defendant claimed that Plaintiff had failed to join an indispensable party, Myrtle Hobbs, as required by Tenn. R. Civ. P. 19, that Plaintiff failed to plead fraud with particularity, that the statute of limitations on the conversion claims had expired, and that Plaintiff was not the real party in interest because he was mentally incapacitated.

Following a hearing, the trial court granted Plaintiff's motion for summary judgment and denied Defendant's motion to dismiss. The trial court found that there were no genuine issues of disputed material fact concerning plaintiff's claims against defendant, and plaintiff is entitled to judgment as a matter of law. Defendant admits that he had a confidential relationship with defendant. A presumption of undue influence applies to defendant's transactions regarding plaintiff's bank accounts and the funds in those accounts. Through a series of bank transactions from 2003–2005, defendant depleted plaintiff of substantially all of his life savings, leaving plaintiff with no other significant savings or assets. Defendant's depletion of plaintiff's funds during plaintiff's lifetime cannot have been fair to plaintiff.

The court went on to award Plaintiff a judgment in the amount of $279,500, plus pre-judgment interest of $136,084, for a total judgment of $415,584. It is from this judgment that Defendant appeals.

### ANALYSIS

Defendant raises several issues on appeal, which challenge the propriety of the grant of summary judgment in favor of Plaintiff and the denial of Defendant's motion to dismiss. The various issues are discussed below.

### REAL PARTY IN INTEREST

Defendant contends that Plaintiff is not the real party in interest, as is required by Tenn. R. Civ. P. 17, because he lacks the mental capacity to commence or maintain this action. We find no merit to this contention.

A person is presumed to be competent; thus, Plaintiff is presumed to be competent, *see Rawlings v. The John Hancock Mutual Life Ins. Co.,* 78 S.W.3d 291, 297 (Tenn.Ct.App.2001), and the party asserting another's lack of mental capacity bears the burden of proof, and that proof

must be clear, cogent, and convincing. *Dickson v. Long*, No. M2008–00279–COA–R3–CV, 2009 WL 961784, at *3 (Tenn.Ct. App. April 8, 2009) (citing *Waller v. Evans*, No. M2008–00312–COA–R3–CV, 2009 WL 723519, at *3 (Tenn.Ct.App. Mar.17, 2009); *Estate of Dooley v. Hickman*, No. E2005–02322–COA–R3–CV, 2006 WL 2482967, at *6 (Tenn.Ct.App. Aug.29, 2006); *Knight v. Lancaster*, 988 S.W.2d 172, 177–78 (Tenn. Ct.App.1998)). Moreover, the mere suggestion that a person is advanced in age, forgetful or has senile dementia is insufficient to prove a lack of mental capacity. *Rawlings*, 78 S.W.3d at 297. As this court stated in *Rawlings:*

> It is not enough to prove that a person was depressed or had senile dementia. To prove mental incapacity, the person with the burden of proof must establish, in light of all the surrounding facts and circumstances, that the cognitive impairment or disease rendered the contracting party incompetent to engage in the transaction at issue according to the standards set forth above.

*Id.* (citing *Butler v. Harrison*, 578 A.2d 1098, 1101 (D.C.1990); *Weakley v. Weakley*, 355 Mo. 882, 198 S.W.2d 699, 702–03 (Mo.1947)) (footnotes omitted).

■ The issue of Plaintiff's incompetence was raised in Defendant's Motion to Dismiss; however, Defendant presented no competent evidence to support this assertion. There are no medical records or expert medical testimony indicating that Plaintiff is mentally incapacitated. To the contrary, in the months prior to Defendant asserting Plaintiff's incompetence, he acknowledged that Plaintiff was in fact competent. An Agreed Order dated April 6, 2006, stated that in the event Plaintiff *"becomes* incapacitated, either party may exercise any health care power of attorney to obtain medical attention." (Emphasis added). Additionally, in his Answers to

Plaintiff's First Set of Requests to Produce, Defendant responded to a request for the health care records of Plaintiff by stating "[Plaintiff], as a *competent* individual has access to his medical records." (Emphasis added).

We have determined, as the trial court did, that Defendant failed to carry his burden of proof to establish that Plaintiff lacks the mental capacity to commence or maintain this action.

### FAILURE TO JOIN AN INDISPENSABLE PARTY

Defendant contends that his mother, Myrtle Hobbs, is an indispensable party to this action. His contention is based on the fact that some of the funds Defendant withdrew from Plaintiff's savings accounts were deposited by Defendant into an account jointly owned by Mrs. Hobbs.

Tennessee Rule of Civil Procedure 19.01 provides:

> A person who is subject to service of process shall be joined as a party if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest, or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reasons of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party. If the person properly should join as a plaintiff but refuses to do so, he or she may be made a defendant, or in a proper case, an involuntary plaintiff.

Tenn. R. Civ. P. 19.01 (2008).

■ Defendant has failed to establish any of the requisite criteria in Rule 19.01

to show that his mother is an indispensable party. To the contrary, the simple fact is that Plaintiff may obtain complete relief against Defendant without making Mrs. Hobbs a party. The mere fact that her name appears on one of the accounts to which Defendant transferred Plaintiff's funds is of no consequence. Plaintiff elected to bring this action solely against Defendant on the basis that Defendant violated his fiduciary duty by transferring Plaintiff's funds to Defendant's accounts, and there is no claim or assertion that Mrs. Hobbs played any role in Defendant's decision to withdraw or transfer Plaintiff's funds.

This court has previously stated that:

[o]nly a party who will be directly affected by a decree and whose interest is not represented by any other party to the litigation is an indispensable or necessary party, that is, one without which no valid decree may be entered settling the rights between the parties that are before the [c]ourt.

*Moore v. Teddleton*, No. W2005–02746–COA–R3–CV, 2006 WL 3199273, at *6 (Tenn.Ct.App. Nov.7, 2006) (quoting *Brewer v. Lawson*, 569 S.W.2d 856, 858 (Tenn. Ct.App.1978)).

Mrs. Hobbs will not be directly affected by any decree that may be rendered in this action. Accordingly, we find that Mrs. Hobbs is not an indispensable party and that the motion to dismiss for failure to name an indispensable party was properly denied by the trial court.

### DEFENDANT'S FIDUCIARY DUTY
#### AS AN ATTORNEY-IN-FACT

█ It is undisputed that Defendant was the attorney-in-fact for Plaintiff at all times material to this action. The execution and exercise of a power of attorney establishes a fiduciary relationship between the attorney-in-fact and the grantor

of the power. *Martin v. Moore*, 109 S.W.3d 305, 309 (Tenn.Ct.App.2003) (citing *Matlock v. Simpson*, 902 S.W.2d 384 (Tenn.1995); *Mitchell v. Smith*, 779 S.W.2d 384 (Tenn.Ct.App.1989); *Askew v. Askew*, 619 S.W.2d 384 (Tenn.Ct.App. 1981); *Black v. Pettigrew*, 38 Tenn.App. 1, 270 S.W.2d 196 (1953)). The fiduciary is obligated to deal with the property of his principal in "the utmost good faith." *Id.* (citing *Estate of Doyle v. Hunt*, 60 S.W.3d 838 (Tenn.Ct.App.2001); *Alexander v. Inman*, 974 S.W.2d 689 (Tenn.1998); *McFarlin v. McFarlin*, 785 S.W.2d 367 (Tenn.Ct. App.1989)). The duties of loyalty and honesty are also a part of a fiduciary's obligation. *Id.* (citing *Roberts v. Iddins*, 797 S.W.2d 615 (Tenn.Ct.App.1990); *Knox–Tenn Rental Co. v. Jenkins Ins., Inc.*, 755 S.W.2d 33 (Tenn.1988)). Therefore, Defendant was under a fiduciary duty to take all actions on Plaintiff's behalf in the "utmost good faith, loyalty, and honesty." *See Roberts*, 797 S.W.2d at 617.

### CONVERSION AND WHEN IT OCCURS

█ Conversion is the appropriation of another's property to one's own use and benefit, by the exercise of dominion over the property, in defiance of the owner's right to the property. *Hanna v. Sheflin*, 275 S.W.3d 423, 427 (Tenn.Ct.App.2008); *Brandt v. BIB Enters., Ltd.*, 986 S.W.2d 586, 595 (Tenn.Ct.App.1998); *Mammoth Cave Prod. Credit Ass'n v. Oldham*, 569 S.W.2d 833, 836 (Tenn.Ct.App.1977); *Barger v. Webb*, 216 Tenn. 275, 391 S.W.2d 664, 665 (1965). A cause of action for conversion occurs when the alleged wrongdoer exercises dominion over the funds in *"defiance of the owner's rights."* *Hanna*, 275 S.W.3d at 427 (citing *Mammoth Cave*, 569 S.W.2d at 836) (emphasis added).

█ Using his power of attorney, Defendant added himself to Plaintiff's checking and savings accounts. This was done

with Plaintiff's knowledge and consent as a matter of "convenience" to enable Defendant to act for the benefit of Plaintiff as and when he needed funds to pay Plaintiff's bills. Therefore, Defendant did not exercise dominion over the funds in *defiance* of Plaintiff's rights when he added his name to Plaintiff's savings account. Because Defendant did not exercise dominion over the funds in defiance of Plaintiff's rights when he added his name to the accounts, Defendant did not convert Plaintiff's savings at that time.

■ Thereafter, on or about January 22, 2003, Defendant changed the mailing address so that all future bank statements would be sent to Defendant's post office box. This act, without more, did not constitute a conversion of the funds because the mere fact the bank statements were to be mailed to Defendant, who continued to serve as a fiduciary for Plaintiff, did not constitute an act of defiance to the rights of Plaintiff. Moreover, the funds remained in Plaintiff's savings account. Accordingly, Defendant did not convert the funds in Plaintiff's savings account by the mere act of changing the mailing address on the account.

Beginning on February 10, 2003, and during the next twenty-six months, Defendant transferred almost all of Plaintiff's life savings to Defendant's personal accounts. It is undisputed that Defendant withdrew in excess of $279,000 from Plaintiff's savings account and transferred the

funds to two accounts solely owned by Defendant and to one account jointly owned by Defendant and his mother. Although Defendant did not exercise dominion over the funds in defiance of Plaintiff's rights prior to each transfer of funds to his own accounts, as time went by, Defendant exercised dominion over the transferred funds in defiance of Plaintiff's rights. The numerous and repeated acts of defiance occurred either at the time of transfer or at some point in time after each transfer of funds to Defendant's personal accounts. Whether Defendant "converted" the funds at the time of transfer or at some time after each transfer depends on when Defendant exercised dominion over the funds "in defiance of Plaintiff's rights." [2]

Accordingly, we have determined, as a matter of law, that the conversion of Plaintiff's savings did not occur prior to the respective transfers of Plaintiff's funds to Defendant's personal accounts. Therefore, whether conversion occurred at the time of each transfer or at a point in time thereafter is dependent on when Defendant exercised dominion over the funds in defiance of Plaintiff's rights.[3]

*THE STATUTE OF LIMITATIONS DEFENSE*

The foregoing notwithstanding, Defendant argues that Plaintiff's conversion claims are time barred because, he contends, Plaintiff did not file this action within three years from the accrual of the cause of action.[4] Defendant relies on

---

2. Defendant admitted that the funds were not used to make any large purchases for Plaintiff and he could not account for his use of the funds. Defendant also admitted that the funds in Plaintiff's checking account, where his Social Security payments were deposited monthly, were used to pay Plaintiff's living expenses.

3. Although doubtful, Defendant may have initially planned to hold the funds in his person-

al accounts for the benefit of Plaintiff at the time of each transfer. If that is the case, then the mere act of transfer may not have constituted a conversion of the transferred funds.

4. Defendant also contends on appeal that Plaintiff failed to state fraud with particularity as required by Tenn. R. Civ. P. 9.02. We find this contention immaterial to the issue of conversion, which is the basis for Plaintiff's claims against Defendant. Moreover, Plain-

Tenn.Code Ann. § 28–3–105(2), which states that a claim for conversion of personal property shall be commenced within three years from the accrual of the cause of action. It is upon this basis that Defendant insists the trial court erred in denying his motion to dismiss based on the statute of limitations defense.

A cause of action for conversion *occurs* when the alleged wrongdoer exercises dominion over the funds in "defiance of the owner's rights," *Hanna,* 275 S.W.3d at 427 (citing *Mammoth Cave,* 569 S.W.2d at 836). A cause of action *accrues* "when the plaintiff knew or reasonably should have known that a cause of action existed." *Id.* (citing *Johnson v. Craycraft,* 914 S.W.2d 506, 511 (Tenn.Ct.App.1995) (quoting *Stone v. Hinds,* 541 S.W.2d 598, 599 (Tenn.Ct.App.1976))). Therefore, two determinations must be made: (1) when did Defendant exercise dominion over the transferred funds in defiance of Plaintiff's rights, and (2) when did Plaintiff know, or reasonably should have known, that a cause of action for conversion existed.

It is Defendant's contention that Plaintiff's cause of action for conversion is time barred because the claim accrued prior to February 23, 2003, more than three years prior to the commencement of this action. Of the numerous transfers by Defendant of Plaintiff's savings into Defendant's personal accounts, only three of the transfers occurred more than three years prior to the filing of this action. The first transfer of $8,500 occurred on February 10, 2003; the second transfer of $24,500 occurred on February 13, 2003; and the third transfer of $5,000 occurred on February 21, 2003. All other transfers occurred after February 23, 2003; therefore, these claims are not time barred and the trial court correctly denied Defendant's motion to dismiss as

tiff is not pursuing a claim for fraud in this

to these claims. Whether the claims of conversion concerning the first three transfers are time barred requires further analysis.

"Mere ignorance and failure of a plaintiff to discover the existence of a cause of action is not sufficient to toll the running of the statute of limitations." *Hanna,* 275 S.W.3d at 428 (citing *Vance v. Schulder,* 547 S.W.2d 927, 930 (Tenn.1977); *Hall v. DeSaussure,* 41 Tenn.App. 572, 297 S.W.2d 81 (1956)). Nevertheless, the accruing of a cause of action may be tolled by a defendant's fraudulent concealment of the cause of action. *Id.*

To establish fraudulent concealment, a plaintiff must prove the following: (1) that the defendant took affirmative action to conceal the cause of action or remained silent and failed to disclose material facts despite a duty to do so; (2) that the plaintiff could not have discovered the cause of action despite exercising reasonable care and diligence; (3) that the defendant had knowledge of the facts giving rise to the cause of action; and (4) that the defendant concealed material facts from the plaintiff by withholding information or making use of some device to mislead the plaintiff, or by failing to disclose information when he or she had a duty to do so. *Pero's Steak and Spaghetti House v. Lee,* 90 S.W.3d 614, 625 (Tenn.2002) (citing *Shadrick v. Coker,* 963 S.W.2d 726, 735–36 (Tenn.1998)). Thus, Plaintiff has the burden to prove that Defendant took affirmative action to conceal his cause of action from him. *Hanna,* 275 S.W.3d at 428 (citing *Vance,* 547 S.W.2d at 930; *Willis v. Smith,* 683 S.W.2d 682, 688 (Tenn.Ct.App. 1984)).

When there is a fiduciary relationship between the parties, the "failure to speak where there is a duty to speak is

appeal.

the equivalent of some positive act or artifice planned to prevent inquiry or escape investigation." *Shadrick*, 963 S.W.2d at 735 (quoting *Hall*, 297 S.W.2d at 85). As our Supreme Court has explained,

> the affirmative action on the part of the defendant must be something more than mere silence or a mere failure to disclose the known facts. There must be some trick or contrivance intended to exclude suspicion and prevent inquiry, *or else there must be a duty resting on the party knowing such facts to disclose them. . . . For example, such a duty arises where a confidential relationship exists, as between physician and patient.* In such cases, there is a duty to disclose, and that duty may render silence or failure to disclose known facts fraudulent. This is the rule in Tennessee and in other jurisdictions.

*Id.* (quoting *Benton v. Snyder*, 825 S.W.2d 409, 414 (Tenn.1992)) (emphasis in original). Defendant owed Plaintiff a fiduciary duty at all times material to this action; thus, Defendant had a duty to disclose any material fact or information pertaining to the fiduciary relationship. *See id.* Moreover, as the *Shadrick* court held, that duty *may* render silence or failure to disclose known facts fraudulent. *Id.*

■ "The third essential element of fraudulent concealment is knowledge on the part of the defendant of the facts giving rise to the cause of action." *Id.* (citing *Benton*, 825 S.W.2d at 414). "In other words, the defendant must be aware of the wrong." *Id.* (citing *Housh v. Morris*, 818 S.W.2d 39, 43 (Tenn.Ct.App.1991) (stating fraudulent concealment will be shown where the defendant had knowledge of the wrong done and concealed such information from the plaintiff)).

■ The fourth essential element of fraudulent concealment is a concealment of material information from the plaintiff.

*Id.* (citing *Benton*, 825 S.W.2d at 414). A concealment " 'may consist of withholding information or making use of some device to mislead' the plaintiff in order to exclude suspicion or prevent inquiry." *Id.* (quoting *Benton*, 825 S.W.2d at 414). "When there is a relationship involving trust and confidence between the parties which would impose a duty to make a full disclosure of the material facts, mere silence or non-disclosure may constitute concealment." *Id.* at 735–36 (citing 54 C.J.S. *Limitations of Actions* § 90 (1987)).

The rationale for this element of the rule has been explained as follows:

> Fiduciary relationship, confidential relationship, constructive fraud and fraudulent concealment are all parts of the same concept. The nature of the relationship which creates a duty to disclose, and a breach of [that] duty constitutes constructive fraud or fraudulent concealment, springs from the confidence and trust reposed by one in another, . . . Once the relationship exists "there exists a duty to speak . . . [and] mere silence constitutes fraudulent concealment."

*Shadrick*, 963 S.W.2d at 736 (quoting *Garcia v. Presbyterian Hospital Ctr.*, 92 N.M. 652, 593 P.2d 487, 489–90 (N.M.App.1979)).

Applying the four elements of fraudulent concealment to the facts of this case, we have determined the record demonstrates that Defendant Fred Hobbs owed a fiduciary duty to Plaintiff, and that by directing that the bank statements be mailed to Defendant instead of Plaintiff, Defendant took affirmative action to conceal his wrongdoing, i.e., the transfer of Plaintiff's funds to his personal accounts. Further, the record demonstrates that Defendant withheld material information regarding the transfers by making use of a device to mislead Plaintiff, when he changed the ad-

dress to which the bank statements would be mailed, and by remaining silent and failing to disclose material facts when there was a duty to speak. The record also demonstrates that Defendant knew of the facts giving rise to the cause of action, as he was the one who transferred the funds. There is no dispute of any of the foregoing material facts.

■■■ There is, however, a genuine dispute of fact concerning whether Plaintiff could have discovered the wrong by exercising reasonable care and diligence. Whether Plaintiff exercised reasonable care and diligence in discovering the injury or wrong is usually a question of fact for the jury to determine. *Shadrick,* 963 S.W.2d at 737 (citing *Wyatt v. A–Best Co. et al.,* 910 S.W.2d 851, 854 (Tenn.1995)). For this reason, we find there is a material dispute of fact concerning whether Plaintiff could have discovered the fact that certain funds were converted by defendant prior to February 23, 2003. We, therefore, reverse the trial court's judgment as it pertains to the statute of limitations defense and the funds transferred prior to February 23, 2003, and remand the issue to the trial court for a determination by the trier of fact.

*Summary Judgment*

Plaintiff filed a motion for summary judgment contending he was entitled to judgment as a matter of law because it was undisputed that Defendant had converted in excess of $279,000 of his savings. As the moving party, Plaintiff is entitled to summary judgment "only if the pleadings, depositions, interrogatories, admissions and affidavits show there is no genuine issue as to any material fact and that he is entitled to a judgment as a matter of law."

*Martin v. Norfolk S. Ry. Co.,* 271 S.W.3d 76, 83 (Tenn.2008) (quoting Tenn. R. Civ. P. 56.04; *accord Penley v. Honda Motor Co.,* 31 S.W.3d 181, 183 (Tenn.2000)). "The moving party has the ultimate burden of persuading the court that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law." *Id.* (citing *Byrd v. Hall,* 847 S.W.2d 208, 215 (Tenn.1993)).

■■■ If the plaintiff files a motion for summary judgment on an element of one of his claims, the plaintiff "shifts the burden by alleging undisputed facts that show the existence of that element and entitle the plaintiff to summary judgment as a matter of law." *Hannan v. Alltel Publ'g Co.,* 270 S.W.3d 1, 9 n. 6. (Tenn. 2008). If the plaintiff makes a properly supported motion, then the defendant is required to produce evidence of specific facts establishing that genuine issues of material fact exist. *Martin,* 271 S.W.3d at 84 (citing *McCarley v. W. Quality Food Serv.,* 960 S.W.2d 585, 588 (Tenn.1998); *Byrd,* 847 S.W.2d at 215).

■■ A defendant could satisfy his burden of production by: (1) pointing to evidence establishing material factual disputes that were over-looked or ignored by the plaintiff; (2) rehabilitating the evidence attacked by the plaintiff; (3) producing additional evidence establishing the existence of a genuine issue for trial; or (4) submitting an affidavit explaining the necessity for further discovery pursuant to Tenn. R. Civ. P. Rule 56.06. *Id.* (citing *McCarley,* 960 S.W.2d at 588; *accord Byrd,* 847 S.W.2d at 215 n. 6). "The non-moving party's evidence must be accepted as true, and any doubts concerning the existence of a genuine issue of material fact[5] shall be resolved in favor of the

5. "A disputed fact is material if it must be decided in order to resolve the substantive

claim or defense at which the motion is directed." *Martin,* 271 S.W.3d at 84 (quoting

defendant." *Id.* (citing *McCarley*, 960 S.W.2d at 588).

▮▮ A trial court's grant of summary judgment enjoys no presumption of correctness on appeal. *Draper v. Westerfield*, 181 S.W.3d 283, 288 (Tenn.2005); *BellSouth Adver. & Publ'g Co. v. Johnson*, 100 S.W.3d 202, 205 (Tenn.2003). We review a summary judgment decision as a question of law, *Finister v. Humboldt Gen. Hosp., Inc.*, 970 S.W.2d 435, 437 (Tenn. 1998); *Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn.1997), and make a fresh determination of whether the requirements of Tenn. R. Civ. P. 56 have been satisfied, *Blair v. West Town Mall*, 130 S.W.3d 761, 763 (Tenn.2004); *Staples v. CBL & Assoc.*, 15 S.W.3d 83, 88 (Tenn.2000).

▮ We find that Plaintiff demonstrated the elements required to support his claim that Defendant converted Plaintiff's savings. This was demonstrated based on the undisputed fact that Defendant transferred in excess of $279,000 of Plaintiff's savings to Defendant's personal accounts, and thereafter refused to return the funds; thereby, establishing that Defendant has exercised dominion over the transferred funds in defiance of Plaintiff's rights. As a consequence, the burden of production then shifted to Defendant to demonstrate a genuine dispute as to a material fact which would render summary judgment inappropriate. *See Martin*, 271 S.W.3d at 84 (citing *McCarley*, 960 S.W.2d at 588; *Byrd*, 847 S.W.2d at 215).

Although the burden of production shifted to Defendant, Defendant failed to present competent evidence to create a dispute of fact on the issue of conversion. With the exception of the prepaid funeral expenses, Defendant admitted that he cannot prove that any of the transfers were made on Plaintiff's behalf or that any of the funds were expended for Plaintiff's use or benefit. He also admitted that he cannot account for the $279,000 transferred to his accounts.

▮ The only fact relied upon by Defendant in his attempt to create a genuine issue of material fact pertained to a so-called "contract" among Plaintiff (Thomas Ralston), Defendant (Fred Hobbs), and Defendant's mother, Myrtle Hobbs. The contract states in pertinent part:

> We [Thomas Ralston, Fred Hobbs, and Myrtle Hobbs] have this date entered into the following agreement:
>
> 1. Tom R. Ralston shall have a lifetime right to reside at the home of his sister, Myrtle Hobbs at 1197 Swamp Road, Eagleville, Tennessee if he so desires.
>
> 3. Myrtle Hobbs and her son, Fred Hobbs will personally see that all of Tom R. Ralston's personal and medical needs are met as long as he resides at the home of Myrtle Hobbs.
>
> 3. Tom R. Ralston agrees to pay his share of the expenses as long as he resides at the home of Myrtle Hobbs.
>
> 4. Funds deposited in joint bank accounts at Union Planters Bank in the names of Tom R. Ralston and Fred Hobbs are to be used by either party as needed.

The contract bore the signatures of Tom Ralston, Fred Hobbs, and Myrtle Hobbs, and it was dated October 1, 2001, at which time Defendant was Plaintiff's attorney-in-fact.

Defendant contends this contract creates a genuine dispute of fact concerning a

*Byrd*, 847 S.W.2d at 215). "A disputed fact presents a genuine issue if 'a reasonable jury could legitimately resolve that fact in favor of one side or the other.'" *Id.* (quoting *Byrd*, 847 S.W.2d at 215).

material issue, which he describes as "the overall fairness of the transaction" and, he therefore contends, the issue must be decided by the trier of fact, not by the judge on summary judgment. We find no merit to this argument.

▮ The overall fairness of a transaction is a consideration which can be material in cases wherein an attorney-in-fact receives a benefit in a transaction with his principal. The rule in Tennessee is that the existence of a fiduciary relationship, "followed by a transaction wherein the dominant party [the attorney-in-fact] receives a benefit from the other party [the principal], a presumption of undue influence arises, that may be rebutted only by clear and convincing evidence of the fairness of the transaction." *Matlock*, 902 S.W.2d at 386 (citing *Hogan v. Cooper*, 619 S.W.2d 516 (Tenn.1981); *Richmond v. Christian*, 555 S.W.2d 105 (Tenn.1977); *Brown v. Weik*, 725 S.W.2d 938 (Tenn.Ct. App.1984); *Estate of Depriest v. Allen*, 733 S.W.2d 74 (Tenn.Ct.App.1987); *Roberts v. Chase*, 25 Tenn.App. 636, 166 S.W.2d 641 (1942); 19 A.L.R.3d 575, 596).

Defendant, as Plaintiff's attorney-in-fact who received substantial benefits resulting from the transfer of $279,000 to his personal accounts, must establish by a showing of clear and convincing evidence that the transactions were fair to Plaintiff. Defendant contends the so-called contract demonstrates the fairness of the transactions; it does not.

In our recent opinion in *Taylor v. Taylor*, No. M2007–00565–COA–R3–CV, 2008 WL 1850807, at *3 (Tenn.Ct.App. April 24, 2008), a son and daughter, who were the attorneys-in-fact for their mother, were found to have breached their fiduciary duties to their mother when, acting as attorney-in-fact, the daughter conveyed her mother's real property to her brother for no consideration. The siblings attempted to justify the transfer by stating that the son "contributed to the purchase price and worked the property" for their mother. *Id.* We rejected the contention finding that the fiduciary duty required that they "act in her best interest, including the preservation of her assets." *Id.* Our holding was explained, in part, as follows:

> The Power of Attorney executed by Ms. Taylor appointed the Defendants as her attorneys-in-fact to act in her place "on my behalf, and for my use and benefit" and granted them the power to deal with any of her real property "under such terms and conditions as said attorney of fact [sic] shall deem proper." Thus, any transaction involving the property, or any asset of Ms. Taylor, was to be for her "use and benefit" and the Defendants assumed the fiduciary responsibility to so manage her assets. There is nothing in the record to demonstrate that Ms. Taylor received any benefit from the transfer of the property; to the contrary, the record shows that the property was the sole asset of Ms. Taylor.
>
> . . . .
>
> There is no proof that Ms. Bertie Taylor received any benefit from the conveyance of her property . . . .

*Id.* at *3. Upon that finding, we determined that the transfer of Mrs. Taylor's property to her son for no consideration, other than the empty claim that the son rendered services and otherwise contributed to the property, constituted a breach of the fiduciary duty. *Id.*

As in *Taylor*, Defendant Fred Hobbs, as his uncle's attorney-in-fact, had an affirmative duty to preserve his uncle's assets and not pursue his own self-interest or that of his mother. The contract upon which Defendant relies merely establishes that De-

fendant was committed to caring for Plaintiff, and that Plaintiff would pay his own expenses. As for the fourth paragraph, which states that the funds deposited in the joint accounts could be used by either Defendant or Plaintiff "as needed," it clearly reflects that the funds could be used as needed by Plaintiff, for Plaintiff's benefit, not Defendant's benefit. This fact is clearly supported by Defendant's admissions that he added his name to Plaintiff's accounts for the benefit of Plaintiff in order to make it easier to pay Plaintiff's expenses. Moreover, there is no evidence whatsoever in the record to support a finding that Defendant's transfer of in excess of $279,000 to his personal accounts was "needed" for Plaintiff's use or benefit. The contract confirms the role of Defendant as Plaintiff's fiduciary. We, therefore, conclude that the contract does not demonstrate or even create a dispute of fact concerning "the overall fairness of the transaction" as Defendant claims.

 As this Court has previously explained, the existence of a fiduciary or confidential relationship, combined with a gift or benefit to the fiduciary, creates a presumption of the invalidity of the transaction. *Martin v. Moore*, 109 S.W.3d 305, 310 (Tenn.Ct.App.2003). The presumption, however, may be rebutted by clear and convincing evidence of the fairness of the transaction. *Id.* Moreover, proof that the donor received independent advice respecting the consequences and advisability of the gift or transaction can serve as an example of proof of fairness. *Richmond*, 555 S.W.2d at 108. Independent advice is required "where the circumstances are such that it would be difficult to show the fairness of the transaction without proof of independent advice, particularly, where the donor is impoverished by the gift in question or the gift seems to be unnatural under the circumstances of the case." *Id.*

It is undisputed that Plaintiff did not receive independent advice concerning the contract relied on by Defendant. The mere existence of the so-called contract falls short of constituting clear and convincing evidence of the fairness of the transfers which rendered Plaintiff impoverished; moreover, as it pertains to the issue of summary judgment, it is insufficient to even create a genuine dispute of fact concerning the alleged fairness of the transactions.

For the foregoing reasons, we affirm the grant of summary judgment concerning Defendant's conversion of funds from Plaintiff's savings account as it pertains to all transfers that occurred on or after February 23, 2003.

## In Conclusion

We affirm the trial court's denial of Defendant's motion to dismiss in all respects except for the statute of limitations defense as it pertains to funds transferred to Defendant's personal accounts prior to February 23, 2003, specifically the following funds and the following dates: $8,500 on February 10, 2003; $24,500 on February 13, 2003; and $5,000 on February 21, 2003.

As for the award of summary judgment in the amount of $279,500, we affirm the trial court's decision in all respects except for the award of damages for the conversion of funds resulting from the following transfers: $8,500 on February 10, 2003; $24,000 on February 13, 2003; and $5,000 on February 21, 2003, which may or may not be time barred, depending on the trial court's determination as to that issue.

As for the award of pre-judgment interest, that award is also affirmed in all respects except for the amount of the award that is based on the claim that may or may not be time barred.

We therefore affirm the judgment of the trial court except as expressly modified above and remand the issue concerning the statute of limitations defense as it pertains to the $8,500 transfer on February 10, 2003; $24,500 transfer on February 13, 2003; and $5,000 transfer on February 21, 2003, and for such other proceedings as may be necessary and which are consistent with this opinion.

Costs are assessed against Defendant Fred Hobbs and his surety for which execution may issue.