IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 23, 2018 Session

## LUCAS D. BOTTORFF, ET AL. v. ANNE A. SEARS, ET AL.

**Appeal from the Chancery Court for Williamson County**
**No. 45788     Joseph Woodruff, Judge**

———————————————————

**No. M2017-01363-COA-R3-CV**

———————————————————

The Administrator CTA of Decedent's estate filed a petition, against Decedent's daughter, to recoup assets of the estate. In the final year of Decedent's life, Appellant transferred almost $400,000 of Decedent's assets to herself using a power of attorney she obtained after her brother's power of attorney was revoked. The trial court determined that the transfers were self-dealing transactions and that Appellant breached her fiduciary duty to Decedent. The trial court entered a judgment against Appellant in the amount of $116,747.85 plus pre-judgment interest. Additionally, the trial court declared the quit claim deed executed in favor of Appellant to be void *ab initio*. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed and Remanded.**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S. and ARNOLD B. GOLDIN, J., joined.

Anne A. Sears, Franklin, Tennessee, *pro se*.

Lucas D. Bottorff, Brentwood, Tennessee, for the appellee, Lucas Dale Bottorff, Administrator for the Estate of Sally Sears.

### OPINION

#### I.     Background

Decedent, Sally F. Sears, died on July 2, 2016 at the age of 88. In her Will, executed on December 15, 2008, Decedent named her son, Ian Sears, as executor. The Will provides for a special bequest of $10,000 to Ian Sears, with the remainder of the

estate to be divided equally between Ian Sears and his sister, Anne A. Sears ("Appellant").

On May 5, 2015, Decedent executed a durable power of attorney (POA) naming Mr. Sears as her attorney-in-fact, with Ms. Sears as successor attorney-in-fact. On August 13, 2015, Decedent signed a typewritten document entitled "REVOKATION [sic] OF POWER OF ATTORNEY." This document purports to revoke the prior POA in favor of Decedent's son. Having purportedly revoked Mr. Sears' POA by execution of the revocation, Appellant thereafter, acted as Decedent's attorney-in-fact under the original POA, which named her as Decedent's successor POA. Specifically, between October 15, 2015 and November 20, 2015, Appellant transferred $116,899.51 from Decedent's Thoroughbred Financial Services investment account to Decedent's deposit account at Navy Federal Credit Union ("NFCU"). Then between November 20, 2015 and May 17, 2016, Appellant transferred $116,747.85 from Decedent's NFCU account into her own savings account. Appellant spent a substantial portion of these funds, and only $62,000 remained in her savings account at the time of trial. Appellant was unable to account for the use of these funds.

Also under the POA, on April 28, 2016, Appellant prepared a quitclaim deed transferring to herself all of Decedent's "rights, title and interest" in the real property located at 1019 Boxwood Drive, Franklin, Tennessee (the "Boxwood Property"), with the exception of a reserved life estate for Decedent. Appellant signed her mother's name on the quitclaim deed, and signed her own name as "Attorney In Fact." The consideration recited for this conveyance is "$10.00 and 12 years of caregiving aid and assistance which amount is equal to or greater than the amount which the property would command at a fair and voluntary sale." In 2016, the tax appraisal on the Boxwood Property was $275,300.

On August 16, 2016, shortly after Decedent's death, Lucas D. Bottorff ("Appellee" or "Administrator CTA") was appointed Administrator CTA of Decedent's estate. In December 2016, the Administrator filed a petition to recoup assets of the estate and an amended petition to recoup assets of the estate, naming Anne A. Sears as Respondent. The Administrator CTA also recorded a lien *lis pendens* on the Boxwood Property. On January 17, 2017, Appellant filed a response, in which she averred that Decedent knowingly and intentionally transferred her assets to Appellant.

The case was heard on May 12, 2017. The trial court determined that the foregoing transfers of Decedent's assets were self-dealing transactions, which were wrongfully committed by Appellant using the POA. The trial court also determined that even if the revocation of the POA in favor of Mr. Sears was legitimate, Appellant owed Decedent a fiduciary duty. Accordingly, the trial court held that these self-dealing transactions gave rise to the presumption of undue influence, which may be rebutted only by clear and convincing evidence that the transactions were fair. The trial court also

found that even without a presumption of undue influence, there is sufficient evidence to support the conclusion that Appellant breached her fiduciary duty to Decedent. On May 31, 2017, the trial court entered a judgment against Appellant in the amount of $116,747.85 plus pre-judgment interest and ordered Appellant to remit the remaining balance of funds she obtained from Decedent to the Clerk & Master. Additionally, the trial court declared the quit claim deed on the Boxwood property to be void *ab initio*. Appellant appeals.

## II.    Issues

Appellant raises five issues for review as stated in her brief:

1.      Whether the lower court erred in determining transfer of mother's assets to appellant as self-dealing where such transfers were made pursuant to an agreement for caregiving services, where there was a clear benefit to mother in that she was able to live at home, and occurred in accordance with mother's power of attorney?

2.      Whether the lower court erred in using the dead man's statute where the monies and property at [sic] question are not "from" the estate, the action is against an heir, one of only two beneficiaries and recovery will not add or subtract from the distribution of the estate?

3.      Whether it was abuse of discretion to refuse admittance of appellant's videos as not relevant when the decision rested in part on Ian's testimony which conflicted dramatically with the video evidence?

4.      Whether the lower court erred in dismissing appellant's claim of unclean hands against her brother as, she and her brother are the only beneficiaries of Sally F. Sears' estate and the reclamation of assets was for his benefit?

5.      Whether the conduct of the trial court arises to a substantial violation of appellant's due process rights and the taking of her money and property unlawful state action and a civil rights violation?

## III.    Standard of Review

A power of attorney is a written instrument; as with other contracts and written instruments, the legal effect of a power of attorney is a question of law. ***Tenn. Farmers Life Reassurance Co. v. Rose***, 239 S.W.3d 743, 749-50 (Tenn. 2007). We review questions of law *de novo* with no presumption of correctness. ***Bowden v. Ward***, 27

S.W.3d 913, 916 (Tenn. 2000); *Nelson v. Wal–Mart Stores, Inc.*, 8 S.W.3d 625, 628 (Tenn. 1999); *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997); Tenn. R. App. P. 13(d). Whether or not a fiduciary or confidential relationship existed is a question of fact. *Matlock v. Simpson*, 902 S.W.2d 384, 385 (Tenn. 1995); *see also Roberts v. Chase*, 25 Tenn. App. 636, 166 S.W.2d 641 (1942); *Turner v. Leathers*, 191 Tenn. 292, 232 S.W.2d 269 (1950); *Halle v. Summerfield*, 199 Tenn. 445, 287 S.W.2d 57 (1956). Our review of the trial court's findings of fact is *de novo*, accompanied by a presumption of correctness, unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. *Watson v. Watson*, 196 S.W.3d 695, 701 (Tenn. Ct. App. 2005).

While we are cognizant that Appellant is proceeding *pro se*[1], it is well-settled that "*pro se* litigants are held to the same procedural and substantive standards to which lawyers must adhere." *Brown v. Christian Bros. University*, No. W2012-01336-COA-R3-CV, 2013 WL 3982137, at *3 (Tenn. Ct. App. Aug. 5, 2013), *perm. app. denied* (Tenn. Jan. 15, 2014). While a party who chooses to represent himself or herself is entitled to the fair and equal treatment of the courts, *Hodges v. Tenn. Att'y Gen.*, 43 S.W.3d 918, 920 (Tenn. Ct. App. 2000), "[p]ro se litigants are not ... entitled to shift the burden of litigating their case to the courts." *Whitaker v. Whirlpool Corp.*, 32 S.W.3d 222, 227 (Tenn. Ct. App. 2000). Although pro se litigants are entitled to some liberality, "the courts cannot create claims or defenses for pro se litigants where none exist." *Barnett v. Tennessee Orthopaedic All.*, 391 S.W.3d 74, 79 (Tenn. Ct. App. 2012) (quoting *Hessmer v. Hessmer,* 138 S.W.3d 901, 904 (Tenn. Ct. App. 2003)).

## IV. Analysis

### A. Evidentiary Issues

Appellant argues that the trial court erred in refusing to admit certain videos into evidence, which it deemed irrelevant. Specifically, Appellant proffered trial exhibit 18, which is a portable data drive containing several files. The trial court describes the files as

> video recordings depicting [Appellant] caring for the Decedent's personal needs, taking Decedent shopping, taking Decedent to an outdoor park, discussing with Decedent certain events purporting to have taken place between Decedent and Ian Spears, as well as video recordings of what purports to be the interior of the Boxwood property.

On June 6, 2017, the trial court entered a supplemental order, in which it stated that the video files offered as Exhibit 18 were inadmissible hearsay. The trial court added that

---

[1] Although Appellant is proceeding *pro se*, we note that she is a licensed attorney in Virginia.

- 4 -

"even if the contents of Exhibit 18 were admissible, those contents provide no evidence from which the court could reach any findings of fact or conclusions of law that would alter the findings and conclusions stated in the court's previous memorandum and order." We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *White v. Beeks*, 469 S.W.3d 517, 527 (Tenn. 2015), *as revised on denial of reh'g* (Aug. 26, 2015). A court abuses its discretion when it applies an incorrect legal standard, reaches an unreasonable result, or bases its decision on a clearly erroneous assessment of the evidence. *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010). In reviewing the trial court's exercise of discretion, we presume that the decision is correct and review the evidence in a light most favorable to upholding the decision. *Lovlace v. Copley*, 418 S.W.3d 1, 16-17 (Tenn. 2013).

Hearsay is defined as an out of court statement offered in evidence to prove the truth of the matter asserted. Tenn. R. Evid. 801. It is not admissible unless it falls within an exception. Tenn. R. Evid. 802. Appellant argues that the videos of Decedent should have been admitted as a recorded recollection, a hearsay exception under Tennessee Rule of Evidence 803(5). The rule states in pertinent part:

> A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the witness's memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.

Here, Decedent is not available to refresh her recollection or to testify. Accordingly, the videos of Decedent do not fall under the recorded recollection hearsay exception and were properly excluded. However, even if the proffered videos satisfied the exception under Tennessee Rule of Evidence 803(5) exception—which they do not—they should not have been received into evidence *as an exhibit*. Rule 803(5) clearly provides that if the "memorandum or record" can be shown to be a "recorded recollection," it can only be "read into evidence"; it cannot "be received as an exhibit unless offered by an adverse party." *Moore v. Moore*, No. E2005-02469-COA-R3-CV, 2006 WL 2135451, at *12 (Tenn. Ct. App. July 31, 2006), *aff'd*, 254 S.W.3d 357 (Tenn. 2007).

Appellant also argues that the videos should have been admitted as an excited utterance. Tennessee Rule of Evidence 803(2) provides that a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" is considered an excited utterance, and is an exception to the hearsay rule. Tenn. R. Evid. 803(2). As this Court has explained:
> The excited utterance hearsay exception requires proof of several elements:
> (1) a startling event or condition, (2) the statement must relate to the

startling event or condition, and (3) the statement must be made under the stress of excitement.

*Irwin v. Anderson*, No. E2012-00477-COA-R3-CV, 2012 WL 6589932, at *1-2 (Tenn. Ct. App. Dec. 17, 2012); *State v. Lane,* 1993 WL 523534 (Tenn. Ct. App. Dec. 15, 1993), citing Neil P. Cohen et al., Tennessee Law of Evidence, § 803(2).2 (2d ed.1990). As this Court has previously explained:

> [T]he ultimate test is spontaneity and logical relation to the main event, and where an act or declaration springs out of the transaction while the parties are still laboring under the excitement and strain of the circumstance and at a time so near it as to preclude the idea of deliberation and fabrication, it is to be regarded as contemporaneous within the rule.

*Irwin*, 2012 WL 6589932, at *2 (quoting *Collier v. Davis,* 1994 WL27619 (Tenn. Ct. App. Feb. 3, 1994)). In this case, Appellant alleges that the startling event was the time Mr. Sears spent caring for Decedent in July 2015. However, the video was not made until November 2015, some four months later. Appellant stipulated that Decedent suffered from mental disability during the time that Mr. Sears cared for Decedent and the time that the videos were recorded. Appellant did not demonstrate that the excluded videos fit within any hearsay exception under the Tennessee Rules of Evidence; therefore, they were properly excluded by the trial court.

Appellant argues that several of the videos were not hearsay as they were not offered to prove the truth of the matter asserted, but to "reflect . . . Decedent's temperament and personality." Assuming *arguendo* that the videos accurately reflect Decedent's temperament, it is not germane to the issue of whether Appellant violated her fiduciary duty to Appellant. Appellant stipulated that Decedent suffered from physical and mental disabilities for the last three years of her life; therefore, the videos were not reliable evidence of anything at issue in this case.

Appellant also argues that the trial court erred in applying the dead man's statute in this case. Appellant contends that as a result of the trial court's reliance on the statute, significant evidence was excluded. Tennessee Code Annotated section 24-1-203, commonly referred to as the dead man's statute, reads as follows:

> In actions or proceedings by or against executors, administrators, or guardians, in which judgments may be rendered for or against them, neither party shall be allowed to testify against the other as to any transaction with or statement by the testator, intestate, or ward, unless called to testify thereto by the opposite party. If a corporation is a party, this disqualification shall extend to its officers of every grade and its directors.

Tenn. Code Ann. § 24-1-203. Here, we have a complaint filed by an administrator to recoup certain assets of the Decedent's estate. The trial court's judgment in such an action would have a direct impact on the value of Decedent's estate; consequently, Tennessee Code Annotated section 24-1-203 was applicable and the trial court did not err in excluding the evidence proffered by Appellant.

Appellant further argues that the trial court erred in dismissing her claim of unclean hands against her brother. In her response to Appellee's petition and amended petition to recoup assets of the estate, Appellant alleges that Appellee ransacked Decedent's home and made the decision to withhold certain medical treatment that would have prolonged Decedent's life. The record, however, is void of any pleading, wherein Appellant made an actual claim against Mr. Sears or moved to join him as a party to the litigation. Although Mr. Sears is a beneficiary of Decedent's estate, he is not a party to this litigation. Thus, the trial court did not err by omitting a claim that was not pled or by failing to address the argument in its order since Mr. Sears was not a party.

Additionally, Appellant accuses the trial court of violating her right to due process citing to Rule 10 of the Code of Judicial Conduct, Canon 2, Rule 2.3 which states in pertinent part:

**(A)** A judge shall perform the duties of judicial office, including administrative duties, without bias or prejudice.

**(B)** A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice, or engage in harassment, including but not limited to bias, prejudice, or harassment based upon race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation, and shall not permit court staff, court officials, or others subject to the judge's direction and control to do so.

TN R S CT Rule 10, RJC 2.3. Specifically, Appellant alleges that the trial court treated Appellant in a manner that was "biased, highly prejudicial and intended to humiliate and silence her from offering a defense." From our review of the record, Appellant did not raise a due process objection at trial, nor did she cite to a specific page in the record where such an objection was made. When an issue is not raised in the trial court, it is waived on appeal. *Waters v. Farr*, 291 S.W.3d 873, 918 (Tenn. 2009); *In re M.L.P.*, 281 S.W.3d 387, 394 (Tenn. 2009); *Dye v. Witco Corp.*, 216 S.W.3d 317, 321 (Tenn. 2007); *Cookeville Reg'l Med. Ctr. v. Humphrey*, 126 S.W.3d 897, 905-06 (Tenn. 2004). Although the issue is waived, our review indicates that the trial court provided Appellant with ample opportunity to present her proof in this matter, and that her due process rights were not, in fact, violated. Furthermore, the transcript reveals that Appellant interrupted the trial court continuously throughout the hearing and that the trial court gave Appellant

multiple warnings not to interrupt before having Appellant escorted to a holding cell for a brief recess. Trial courts possess inherent, common-law authority to control their dockets and the proceedings in their courts. **Hodges v. Attorney Gen.**, 43 S.W.3d 918, 921 (Tenn. Ct. App. 2000). "[T]he trial judge ... is ultimately responsible for every aspect of the orchestration of a trial." **State v. Milam**, No. M2008-00695-CCA-R3-CD, 2010 WL 744398, at *18 (Tenn. Crim. App. Mar. 3, 2010) (quoting **State v. McCray,** 614 S.W.2d 90, 93 (Tenn. Crim. App. 1981). The record simply does not support Appellant's contention that the trial court behaved in a manner that was "biased, highly prejudicial and intended to humiliate and silence her from offering a defense." This claim is without merit.

### B.      Breach of Fiduciary Duty

Appellant argues that the trial court erred in determining that the transfer of Decedent's assets to Appellant was self-serving. Instead, Appellant contends that the transfers were made pursuant to an agreement for caregiving services and in accordance with Decedent's POA. According to Appellant, this arrangement provided a clear benefit to Decedent, who was able to remain in her own home. With regard to the transfers of Decedent's assets, the trial court's order states in relevant part:

> [Appellant] initially testified she executed these transfers to herself in order to protect her mother's assets from being depleted by her brother. When questioned by the court to explain how spending her mother's money protected her mother, Appellant offered no coherent answer. Likewise, [Appellant] offered no coherent answer when asked by the court if her motive was to protect the assets from dissipation by her brother, why she had not already turned Decedent's assets over to the Administrator. Upon further questioning from the court, [Appellant] admitted her true motivation was to pay herself compensation she believed she was owed for the many years she had cared for her mother, instead of sharing her mother's estate with her brother as set out in her mother's Will.

Ultimately, the trial court found that Appellant owed a fiduciary duty to Decedent and that Appellant breached this duty by transferring title to the Boxwood Property to herself and by transferring Decedent's funds to Appellant's bank account. As such, the trial court determined that "these self-dealing transactions give rise to the rebuttable presumption of undue influence, which may be rebutted only by clear and convincing evidence of the fairness of the transaction." **Matlock**, 902 S.W. 2d at 386.

In attempting to defend the revocation of the POA, Appellant's brief goes into great detail concerning whether and when her relationship with Decedent became a confidential one. Assuming *arguendo* that the revocation of the POA was valid, Appellant nonetheless fails to acknowledge her fiduciary relationship with Decedent.

The execution and exercise of a power of attorney establishes a fiduciary relationship between the attorney-in-fact and the grantor of the power. *Ralston v. Hobbs*, 306 S.W.3d 213, 221 (Tenn. Ct. App. 2009) (citing *Martin v. Moore,* 109 S.W.3d 305, 309 (Tenn. Ct. App. 2003)). The fiduciary is obligated to deal with the property of his or her principal in "the utmost good faith." *Martin,* 109 S.W.3d at 309 (citing *Estate of Doyle v. Hunt,* 60 S.W.3d 838 (Tenn. Ct. App. 2001)); *Alexander v. Inman,* 974 S.W.2d 689 (Tenn. 1998); *McFarlin v. McFarlin,* 785 S.W.2d 367 (Tenn. Ct. App. 1989). The duties of loyalty and honesty are also part of a fiduciary's obligation. *Ralston*, 306 S.W.3d at 221 (citing *Martin,* 109 S.W.3d at 309). Therefore, Appellant was under a fiduciary duty to take all actions on Decedent's behalf in the "utmost good faith, loyalty, and honesty." *See Ralston*, 306 S.W.3d at 221; s*ee also Roberts,* 797 S.W.2d at 617.

In *Martin v. Moore*, 109 S.W.3d 305, 310 (Tenn. Ct. App. 2003), this Court explained that the existence of a fiduciary or confidential relationship, combined with a gift or benefit to the fiduciary, creates a presumption of the invalidity of the transaction. *Id.* However, the presumption may be rebutted by clear and convincing evidence of the fairness of the transaction. *Id.* For example, proof that the donor received independent advice concerning the consequences and advisability of the gift or transaction can serve as an example of proof of fairness. *Ralston*, 306 S.W.3d at 228 (citing *Richmond v. Christian,* 555 S.W.2d 105, 108 (Tenn. 1977)). In fact, independent advice is required "where the circumstances are such that it would be difficult to show the fairness of the transaction without proof of independent advice." *Ralston*, 306 S.W.3d at 228. In this case, the POA used by Appellant contains the following provision: "The above referenced powers shall only be exercised in a manner that is consistent with the then existing dispositive provisions of my estate plan." As noted above, Decedent's estate plan equally divided the bulk of the estate between Ian Sears and Appellant. Based on this fact, the trial court made the following relevant findings in its order:

> [Appellant] offered no evidence Sally Sears received independent legal advice in connection with the revocation of the POA, or with any of these self-dealing transactions. Likewise, [Appellant] offered no evidence these transactions were fair transactions, or otherwise benefitted Sally Sears. Moreover, the self-dealing transactions executed by [Appellant] are in no way in Decedent's best long term interest nor are they consistent with the dispositive provisions of Decedent's estate plan. Indeed, the Court finds [Appellant] executed these self-dealing transactions for the purpose of defeating Decedent's estate plan as expressed in her Will. [Appellant] has failed to rebut the presumption she breached her fiduciary duty as Sally Sears' attorney in-fact.

Interestingly, in her response to Appellee's petitions to recoup assets of the estate, Appellant conceded that Decedent did not wish to compensate her for the care-giving services she provided; yet, Appellant knowingly and intentionally transferred significant

assets of the Decedent to compensate herself for those services. Although Appellant refers to an agreement for caregiving services, the document she references is actually an application for veteran's benefits that Appellant completed on behalf of Decedent. This application was signed by Decedent in September 2015, the same period of time in which Appellant stipulated that Decedent was experiencing mental issues. The trial court admitted this "agreement" into evidence as an admission against interest only. From our review, the evidence in the record clearly supports the trial court's findings that Appellant owed a fiduciary duty to Decedent. As such, the transfers of Decedent's assets to Appellant gave rise to a rebuttable presumption of undue influence. As discussed above, the evidence proffered by Appellant failed to meet her burden to rebut the undue influence presumption by clear and convincing proof.

## V.    Conclusion

For the foregoing reasons, we affirm the trial court's judgment. The case is remanded to the trial court for further proceedings as may be necessary and are consistent with this Opinion. Costs on the appeal are assessed against the Appellant, Anne A. Sears and her surety, for all of which execution may issue if necessary.


_____
KENNY ARMSTRONG, JUDGE